Argued and submitted September 26, 2008, reversed March 19, 2009

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# GREGG ALAN ANDREWS,
*Defendant-Appellant.*

Josephine County Circuit Court
03CR0591; A133612

204 P3d 140

Zachary Lovett Mazer, Deputy Public Defender, argued the cause for appellant. With him on the briefs was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Jeff J. Payne, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Edmonds, Presiding Judge, and Sercombe, Judge, and Carson, Senior Judge.

EDMONDS, P. J.

**EDMONDS, P. J.**

Defendant appeals convictions for possession of a precursor substance with intent to manufacture a controlled substance, ORS 475.967, and possession of a controlled substance (methamphetamine), *former* ORS 475.992 (2003). On appeal, he contends that the trial court erred by failing to dismiss the indictment on statutory speedy trial grounds under ORS 135.747.[1] We agree and therefore reverse the convictions.

The facts relevant to our discussion are procedural. Defendant was indicted on the above-mentioned charges on August 7, 2003. When defendant appeared at his arraignment on August 27, 2003, the court scheduled him for a second arraignment—this time with counsel—on September 3, 2003. Defendant, however, failed to appear for that arraignment, and the court issued a warrant for his arrest. On September 17, defendant appeared, and the court recalled the warrant and set a new arraignment date of September 24, 2003. Defendant appeared on that date, and the trial court set a status hearing for November 3, 2003.

In late November, the court set defendant's trial for April 24, 2004. On April 23, the court granted the state's motion for a continuance, and a new trial date was set for September 29, 2004, with a trial readiness ("call") hearing on September 22. Defendant, though, did not appear at call, and the court issued a bench warrant for his arrest. Defendant appeared on September 27, and the court recalled the warrant.

The court then set a new trial date for February 2, 2005, with a call date on January 26, 2005. Meanwhile, defendant's counsel moved to withdraw, and, after a reset at defendant's counsel's request, the court set a hearing on the motion for November 29. Defendant again did not appear as required, and the court issued yet another warrant for his arrest.

---

[1] Defendant also contends that the trial court erred in denying his motion for a judgment of acquittal as to one of the counts and in instructing the jury regarding aid and abet liability. Because we agree with defendant's speedy trial argument, and the three-year statute of limitations has run on both counts, we do not address his additional assignments of error.

On December 7, defendant appeared in court to clear the outstanding warrant. At the time that defendant appeared, his trial was still set for February 2, 2005; that date had not been rescheduled as a result of his failure to appear at the November 29 hearing. However, after defendant's December 7 appearance, a court clerk routed the trial court file back to calendaring, where a calendaring clerk set a second trial date, this time for March 29, 2005. When the calendaring clerk realized her mistake, she chose to cancel the February date and leave the March 29 date on the calendar.

On February 24, 2005, the state again moved to continue the trial. Defendant objected to the state's request, but the court rescheduled the March trial date for June 7, 2005. On June 1, the state requested another continuance, and defendant again objected. This time, the court denied the state's motion, but the court nonetheless continued the case on its own motion because of a lack of judicial resources—specifically, only one judge was available, and the court gave priority to another case involving an in-custody defendant.

On July 5, the court set defendant's trial for November 3, 2005, with a call date of October 26. On October 4, defendant filed a motion to dismiss for lack of a speedy trial under ORS 135.747, and the court took the matter under advisement on October 17. At call on October 26, defendant failed to appear, and the court reset the trial for January 5, 2006. On October 28, Pat Wolke, then a judge pro tempore, issued a letter opinion denying defendant's motion to dismiss.

At call for the January trial date, defendant reported that he was ready for trial, but the court, on its own motion, reset the trial date for February 8, 2006. At call for the February 8 trial date, defendant again reported that he was ready for trial. Defendant's counsel, however, also had another trial scheduled for that same week involving another defendant. That second trial involved a defendant who was in custody but had waived his speedy trial rights. The court nonetheless elected to proceed on defense counsel's other case involving the in-custody defendant and reset defendant's trial date for April 12, 2006.

On March 15, defendant filed a second motion to dismiss for lack of a speedy trial under ORS 135.747. Two weeks later, defendant moved to postpone his upcoming April trial date because he required triple-bypass surgery. The court granted the motion to postpone and scheduled the trial date for August 9, 2006. In May 2006, the court denied defendant's second motion to dismiss under ORS 135.747. Defendant was finally tried on August 8 and 9, 2006. He was convicted on both counts in the indictment.

In his first assignment of error, defendant argues that the court erred by not granting his second motion to dismiss for lack of a speedy trial on statutory grounds. In denying defendant's motion to dismiss, Judge Lindi Baker explained:

"Judge Wolke concluded that the state delay at the time of his letter opinion was approximately 15 months. If this Court adds on the extra five months that both parties and the Court agree should have been assessed as a state delay, not a defense delay, the subtotal state delay is 20 months. Additionally, the Court adds an additional month to reflect a start date from the date of indictment, not the arraignment (subtotal state delay is 21 months). And, finally, the Court adds three months of state delay that have occurred since Judge's Wolke's ruling (total state delay of 24 months). The defense argues that the total state delay is 25 or 26 months. The Court concludes that it is less than that, but the difference is not determinative for the Court's ruling on this motion.

"Defendant is charged with a Class B felony and a Class C felony in this case. His total delay is approximately 32 months, 24 of which have been state caused. Argument presented in the current motion indicated that a certain portion of state caused delay was due to the unavailability of judges, the court's scheduling procedures and priorities of other 'in custody' trials and court set overs. (It is noted that the Defendant caused approximately 8 months of delay due to multiple failures to appear.)

"In assessing the overall delay in bringing this case to trial, and in reviewing all of the attendant circumstances, including the causes of the delay, the Court concludes that a delay of 24 months is not unreasonable. In reaching this conclusion, the Court relies on the guidelines provided in

*State v. Adams*, 339 Or 104, 112 (2005) in which the Supreme Court stated that it is difficult to identify the point at which a delay becomes unacceptable but suggests that a delay that roughly equals the statute of limitations for the crime(s) charged would be too long.

"Here, Defendant is charged with B and C felonies, each carrying a statute of limitations of three years. ORS 131.125(6)(a). The state caused delay is approximately 24 months (25 to 26 months by Defendant's argument). While not insignificant, this period of time is notably less than the statute of limitations of thirty six months. Accordingly, given the attendant circumstances of the state caused delay, the Court finds that such delay is not unreasonable. Defendant's motion must be denied."

■■ "A statutory speedy trial claim presents two related but separate inquiries." *State v. Johnson*, 342 Or 596, 615, 157 P3d 198 (2007), *cert den*, 128 S Ct 906 (2008). The first inquiry is whether the delay in trying the defendant is "reasonable" under ORS 135.747, which provides:

"If a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

In deciding whether a delay is "reasonable," a court considers both the length of the delay and the reasons for it. *State v. Johnson*, 339 Or 69, 88, 116 P3d 879 (2005). In calculating the length of the delay, the court does not count those delays that the defendant caused or to which the defendant expressly consented. *Id.* at 95; *see also State v. Davids*, 339 Or 96, 100-01, 116 P3d 894 (2005) (suggesting that a defendant's "pattern of tactics at odds with demanding dismissal" under ORS 135.747 might constitute an implied waiver of the right to a speedy trial). When the length of the delay "is greater than would be expected," the court must examine all the attendant circumstances, including the reasons for the delay. *Johnson*, 339 Or at 88-89.

■■ If the state has failed to bring a defendant to trial within a reasonable period of time, the second inquiry is whether there is "sufficient reason" to continue the case. ORS

135.750.[2] In deciding the sufficiency of the reason, we must look to the purposes underlying the speedy trial statute—to clear out cases that "are languishing in the criminal justice system without affecting the state's ability to reprosecute serious charges" and to serve as a "housecleaning" mechanism for trial court dockets. *Johnson*, 339 Or at 90-91. The question whether the delay is "reasonable" under ORS 135.747 and the question whether there is "sufficient reason" to continue the case under ORS 135.750 are questions of law. *Id.* at 86-87.

In this case, the total period of delay between defendant's indictment (August 7, 2003) and his trial (August 8, 2006) was three years. He had 10 different trial settings during that period. He twice failed to appear at call and once moved for a continuance because he required surgery. The state three times moved to continue the trial date (and twice had its motion granted). The court, on its own motion, continued the case three times, and a calendaring clerk once reset the trial date as the result of a scheduling error.

At the time that the court decided defendant's second motion to dismiss in May 2006, the total period of delay was 32 months. The trial court found that defendant had caused approximately eight months of that delay and that the state was responsible for the remaining 24 months. Although defendant challenges the accuracy of the trial court's allocation, we need not decide whether the disputed periods of delay are attributable to defendant or to the state because, even assuming they are attributable to defendant, based on the record before us, we disagree with the trial court that a delay of 24 months by the state is reasonable under ORS 135.747.

■ A delay of 24 months is considerably longer than would ordinarily be expected to bring a defendant to trial on

---

[2] ORS 135.750 provides:

"If the defendant is not proceeded against or tried, as provided in ORS 135.745 and 135.747, and sufficient reason therefor is shown, the court may order the action to be continued and in the meantime may release the defendant from custody as provided in ORS 135.230 to 135.290, for the appearance of the defendant to answer the charge or action."

felony charges. *See, e.g., State v. Forsyth*, 220 Or App 476, 485, 188 P3d 299 (2008) (explaining that a 21-month delay is "considerably longer than the 15 months that we observed to be generally regarded as excessive"); *State v. Spicer*, 222 Or App 215, 222-23, 193 P3d 62 (2008) (delay of 17.25 months for two counts of felon in possession of a firearm was unreasonable and required reversal under ORS 135.747). The question, then, is whether a 24-month delay in bringing defendant to trial was nevertheless reasonable in light of the attendant circumstances in this case.

■■ As the Supreme Court explained in *State v. Adams*, 339 Or 104, 111-12, 116 P3d 898 (2005), there are limits to how far the priorities of an overcrowded docket and the availability of judicial resources can go in expanding the period of time that will be considered "reasonable" for bringing a defendant to trial. "At some point, the focus must shift away from whether the various postponement requests and decisions *individually* are justifiable to whether the overall period of time to bring the defendant to trial is 'reasonable' *in toto*."[3] *Id.* (emphasis in original). In *State v. Myers*, 225 Or App 666, 667, 202 P3d 238 (2009), we applied the overall focus required by *Adams* and concluded that all the delays attributable to the state were justified—in the early part of the life of the case by the routine scheduling delays that are always present and, later, by the lack of judicial resources. Thus, "the acceptability of the total delay in a case is influenced by the extent to which it is justified. The longer the total delay is, the shorter any unjustified portion may be." 225 Or App at 677.

On appeal, the state defends the trial court's conclusion that the delays by the state in this case were reasonable. However, the state's argument and our review are hampered by the state's failure to make an adequate record before the trial court as to why delays attributable to it were justifiable. Some examples follow. On September 17, 2003, defendant

---

[3] In *Adams*, the court held that a 23-month delay, excluding the delay that the defendant caused, exceeded the reasonable limit for the prosecution of a driving while under the influence charge, which had a two-year statute of limitations. 339 Or at 112. As the trial court noted, the offenses for which defendant was charged in this case were governed by a three-year statute of limitations.

cleared the first warrant for his failure to appear at arraignment, and he was then arraigned on September 24, 2003. Excluding the time that is attributed to defendant for his failure to appear at the arraignment, the time between his indictment and his *first* trial setting (April 27, 2004) was approximately 8.3 months. There is no explanation or justification in the record for that delay. The state then moved to postpone the April 27, 2004, trial date because one of its key witnesses, the officer who investigated the case, was not available. The trial date was then rescheduled to September 29,2004, or a date more than 13 months after defendant was charged. What is missing from the record is an explanation of why another delay of five months was necessary and why the trial date could not have been expedited at that time in light of the previous unexplained eight-month delay.

When defendant failed to appear at call for the September 2004 trial date, the case was reset for February 2005. As a result of a calendaring error, the trial date was later moved to March 29, 2005. Assuming, for the sake of argument, that defendant was responsible for those delays, the next delay occurred when the state moved to continue the March trial date, again based on the unavailability of a key witness. The resulting continuance extended the trial date another two months, from March 29 to June 7, 2005. Again, there is no explanation as to why trial could not have been set at an earlier date rather than continuing it for another two months. By that point, the case had been pending for nearly 20 months (with a delay attributable to the state of more than 15 months).

Then, in June 2005, the state moved for another continuance—yet again based on witness availability. The court denied the state's motion, but, on its own motion, continued the case because of a lack of judicial resources. The next trial setting was not until November 3, 2005. Although there is evidence in the record regarding the lack of judicial resources and crowded docket between June and November 2005, the record does not explain why a five-month delay was necessary for this particular defendant, given the previous history of delays in this case. More specifically, the record does not demonstrate why defendant's case, which was two years old

by that time, did not receive higher priority over other cases ready for trial. We conclude that the legislature intended that, under ORS 135.747, when a case is continued, the defendant does not necessarily go to the end of the line for purposes of setting a new trial date.

It bears emphasis that the ruling before this court is the denial of defendant's second motion for dismissal under ORS 135.747. Defendant's first motion was denied in October 2005. At that time, the presiding judge found that the net delay caused by the state was "slightly less than 15 months, which makes this a very close case." In fact, as the court later determined, the actual state delay at that time was 20 months. At call for the January 2006 trial date, which was set as the result of defendant's failure to appear at call on October 26, defendant reported ready for trial. The court, however, reset the trial date for February 8, 2006. At call for that trial date, defendant again reported that he was ready for trial, but the court gave priority to a trial of a defendant who had waived his speedy trial rights.

It is not our intent to second-guess the propriety of any of these individual rulings regarding trial postpone-ments, but as *Adams* instructs, at some point, the focus must be on the overall period of time that it took to bring defendant to trial. As demonstrated by the above-described procedural history, the record does not contain an adequate explanation for the length of delay that resulted from the setovers attrib-utable to the state. That is, the state's evidence justifies the court's decisions to postpone certain trial dates, but it does not demonstrate why the resulting delays—which were as long as five months—were reasonable in light of the age of defendant's case. Rather, it appears on this record that each time a trial date was canceled, defendant simply received a new trial date in the ordinary course, and that no effort was made to prioritize defendant's case, even after the trial court recognized that defendant's *first* speedy trial motion pre-sented a "very close case."

Under those circumstances, we are unwilling to declare that a delay of 24 months was reasonable. As we understand *Adams*, more is required than simply to ask whether a delay is within the statute of limitations, which

appears to have been the focus of the trial court's analysis. In *Adams*, the court explained:

> "Although statutes of limitation clearly serve a different purpose than the speedy trial statutes, they nevertheless provide some indication of what the legislature views as the outer limit of reasonableness for proceeding against a defendant for a given crime. If two years is the limit for *commencing* a DUII prosecution, then it certainly must be beyond the reasonable time for bringing to trial a defendant whom the state already has charged with DUII."

339 Or at 112 (emphasis in original). *Adams* itself, however, cautioned that its "utilization of the applicable statute of limitations in this case does not, of course, mean that *only* such extreme delays will require dismissal pursuant to ORS 135.747[.]" *Id.* at 112 n 9 (emphasis added). In fact, the Supreme Court and this court have found state delays of 21 months and less to be unreasonable, despite statutes of limitations in those cases of three years or more. *See, e.g.,* *Johnson*, 339 Or at 88-89 (21-month delay was unreasonable for third-degree rape charge with a six-year statute of limitations); *Davids*, 339 Or at 101-03 (11.5-month delay was unreasonable where one of the charges, felony driving while suspended, carried a three-year statute of limitations); *Spicer*, 222 Or App at 223 (17.25-month delay was unreasonable where charges for felon in possession of a firearm carried three-year statute of limitations); *Forsyth*, 220 Or App at 485 (21-month delay was unreasonable where it was nearly two thirds of the applicable three-year statute of limitations). The three-year statute of limitations in this case, although an indicator of the "outer limit" of reasonableness, does not justify a two-year delay for the trial of felony drug charges that has not been adequately explained by the state.

In sum, the state's delay in bringing defendant to trial was well beyond the time expected for a felony trial, and the state's justifications for that delay were insufficient to demonstrate that defendant could not have been tried sooner. Moreover, nothing in the record demonstrates that the delay was due to any special circumstance or policy that would provide sufficient reason for the trial court to have continued the case under ORS 135.750; the state's proffered "sufficient reason" to continue the case is based on the same

arguments that we have rejected with regard to "reasonableness" under ORS 135.747. *See Johnson*, 339 Or at 76-77 (describing the circularity between the two statutes). Thus, the trial court should have granted defendant's motion to dismiss for lack of a speedy trial.

Reversed.